Birchard, J.
Preliminary to the consideration of any of the many questions which have been so fully litigated in this case, we are called upon to determine whether, in Ohio, a court of chancery has jurisdiction in matters of probate, and may entertain a bill, the sole object of which is to establish and prove a lost or spoliated last will and testament. For it is manifest that if no such po wer exists, it is not required, and would be improper to pass upon any of the facts mooted in this controversy. The sole object of the bill is to establish such lost or spoliated will. Upon this question of jurisdiction, we necessarily have to recur to the original source of all our power, the constitution of the state. Article 3, section 1, vests the judicial power of the state, “ both as to matters of law and equity,” “in a Supreme Court, in courts of common pleas for each county, in justices of the peace, and in such other courts as the legislature may, from time to time, establish.” By section 2, the Supremo Court “has original and appellate jurisdiction, both in common law and chancery, in such cases as shall be directed by law.” By section 3, the courts of common pleas, within their respective counties, “ have common law and chancery jurisdiction in all cases directed by law.” Section 5 is in these words: “ The court of common pleas, in each county, shall have jurisdiction of all probate and testamentary matters, granting administration, the appointment of guardians, and such other cases as shall be prescribed by law.”
From one or the other of these several sections, the authority to entertain this bill must be deduced. If not contained there, or if the spirit of those sections and the legitimate legislation ^consistent with them have not conferred it, we shall be forced to say it does not exist.
That section 5 authorizes a chancery proceeding in a case like this, is a position that can not be maintained. Its terms con *300 fer jurisdiction of ail probate and testamentary matters upon the common pleas courts, and not a word is contained in the instrument in conflict with this general grant of power. “ Expressio unius est exclusio atterius,” is a maxim clearly applicable to this section, so far as matters purely of a probate and testamentary char ader are concerned. The express grant of power forbids, by inference, an implied one in connection therewith. The jurisdiction is therefore exclusive as to all matters merely probate in their nature. This opinion is not new in this court. In pronouncing the decision in Hunter’s case, 6 Ohio, 501, Wright, J., commenting upon these articles of the constitution, observes, that they indicate “a determination to keep the ecclesiastical, common-law, and chancery jurisdictions as separate and distinct as our judicial system will permit.;” and, again, that the probate of a will belongs neither to the common-law nor equity jurisdiction conferred upon the court of common pleas, but appertains to the ecclesiastical jurisdiction of the English courts, which is specially conferred upon our courts of common pleas as courts of probate.”
Again, in 8 Ohio, 19, this language is held : “By our law, a particular tribunal is appointed to receive probate of will. It does not signify that it is not by name a court of probate — that it is the court of common pleas, with a probate side to it. The same court has jurisdiction of both chancery and common-law controversies, and yet this mixture of powers would not avail, as an argument, to prove that its equity jurisdiction was different in kind from that of courts of chancery in England."
Consistent with these remarks, and article 3 of the constitution, is the “act to organize the judicial courts.” Sec. 4. “The court of common pleas shall have power to examine *and take the proof of wills, grant letters testamentary thereon, etc., and to hoar and determine all causes of probate and testamentary nature.” All the chancery powers of that court are granted, in other words.
The act relating to wills still keeps up and sustains the same separation of jurisdiction. The probate is of the original jurisdiction of that court, and so recognized by the act in which the proof is prescribed, the mode of proceeding, and the effect of the record. And in Swan’s Stat. 996, sec. 33, it is declared, that “no will shall be effectual to pass real or personal estate, unless it shall have been duly admitted to probate,” etc., as provided by the act. The *301 act makes no mention of any method of establishing a will by a chancery proceeding. The probate is treated as a judicial act at law, binding upon all parties, and final and conclusive upon all parties. There is no appeal from the decision, no writ of error or bill of review; no way of vacating it, except the peculiar one provided by our statute. 9 Ohio, 96; 8 Ohio, 239.
To test the propriety of encroaching, in any manner, upon a jurisdiction so peculiar, and which, from its nature, ought to be exclusive, let us anticipate some of the difficulties that might flow from entertaining this bill.
1. A decree in chancery is not the probate of a will. Hence, a decree establishing a will can not operate to give it vitality, and is utterly powerless; or else section 33 of the statute relating to wills must be taken and held, pro tanto, repealed by the decree. The decree and the statute would speak different language on the same subject. One would say, the will of Morningstar is effectual to pass real and personal property, without admission to probate, as the act provides ; the other, that it is of no effect. The conflict is irreconcilable, and the weaker in the contest must give way.
Again, what would be the effect, if, after rendering a decree either for or against the validity of the supposed lost will, a real and different will should be produced? Is the litigation a bar to its probate? Does it oust the court of common pleas *of jurisdiction. Might not the will then be called for, be produced, be proved and admitted of record, and would it not be effectual to vest titles according to the devises and bequests of the testator? We think it would, because the chancery proceeding would be regarded wholly coram. non judice and void, and because the statute would enforce its production, and is express as to the effect of the probate.
But it is urged that the spoliation of the supposed will, with intent to destroy the alleged devises to complainants, affords grounds of equity jurisdiction ; that the power to establish spoliated, suppressed, and destroyed wills was one of the powers known to courts of chancery at the adoption of our constitution ; and sundry authorities are cited to sustain the position. A word as to these:
1. The New York cases, by inference at least, if not directly, make against the complainant, Section 63 of their statute (Re *302 vised Code, vol. 2, p. 66), confers upon the court of chancery the same power to take the proof of the execution and validity of a lost or destroyed will, and to establish the same, as in the case of lost deeds; and the constitution of the State of New York contained nothing in conflict with the act. The grant of the power, however, shows that the jurisdiction was not then understood as being inherent in the chancery courts, otherwise we should have seen no such specific grant of jurisdiction.
All the other cases cited are commented upon, in the case of Gaines et ux. v. Chew et al., 2 Howard, 647. Those authorities, carefully examined, will show that a court of chancery has no inherent power, either in England or America, to establish a lost will. It is true that the United States Supreme Court did not, professedly, decide the point. They, however, did decide that a will must be proved before a title could be set up under it, and that, by the general law, a court of probate must take the proof (p. 646), and a discovery was oi’dered in that ease, as it would seem, for no other purpose than to aid the appropriate probate tribunal in establishing the *lost will. If we have correctly comprehended the subject, there is no ground to sustain this bill. It is not framed for the purpose of a discovery, in aid of a probate court. Its only basis of relief is under a supposed title, which can not be made manifest in this court without showing the will itself, duly admitted to probate, which it seeks to have established, and which can not here be established; and should it ever become a matter of probate, there will then be no cause for sustaining the bill, inasmuch as the remedy at law in that event will be plain and adequate.
Again, it is further said that the remedy must be in chancery because the statute has pointed out no mode of proving a spoliated will; and we,are asked if there can be so great a wrong as the destruction of a paper divesting another of title, and vesting it in the fraudulent spoliator, without a remedy? In general, it may be said that there is no wrong without a remedy; and were we to say that this case was not without a remedy, it would not follow that this is that remedy. It may be that the court of common pleas, by the grant of power in article 3, section 5, of the constitution, is clothed with general powers adequate to give the appropriate relief; if not, the legislature can clothe those courts with ample power. It is sufficient for us to say that, in either *303 event, this court will not have appellate jurisdiction, as from a court of probate, to revise their decision. Nor till after the will shall have been proved, approved, and admitted to record, can this court act in any manner touching or concerning its validity, and then only in the manner prescribed by statute. That mode of proceeding will not have for its object to establish the will, but to determine whether it may or may not have been improperly established by a competent court.
As the question should have been presented by demurrer to the bill, the expense incurred by respondents has been made in their own wrong.
Bill dismissed, each party to pay their own costs.